**MANATT, PHELPS & PHILLIPS, LLP**
JOHN MCGUINNESS (Bar No. CA 277322)
E-mail: JMcGuinness@manatt.com
KRISTIN HAULE (Bar No. CA 312139)
E-mail: KHaule@manatt.com
2049 Century Park East
Suite 1700
Los Angeles, California  90067
Telephone:  310.312.4000
Facsimile:   310.312.4224

*Attorneys for Defendant*
*PRESSED JUICERY, INC.*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LAUREN CHRISTIAN, individually and on behalf of all others similarly situated,<br><br>    Plaintiff,<br><br>    v.<br><br>PRESSED JUICERY, INC., a Delaware corporation; and DOES 1 to 10, inclusive,<br><br>    Defendants. | No. 2:20-cv-10919-AB-JC<br><br>**DEFENDANT'S NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION AND TO DISMISS AND/OR STAY CASE; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>[*Filed Concurrently with: Declaration of Blaine LaBron and Exhibits thereto; Proposed Order*]<br><br>Date: March 19, 2021<br>Time: 10:00 a.m.<br>Judge: Hon. Andre Birotte Jr.<br>Crtrm: 7B<br>Filed:  December 1, 2020 |

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

NOTICE OF MOTION AND MOTION TO
COMPEL ARBITRATION AND DISMISS
AND/OR STAY, NO. 2:20-CV-10919

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE that on March 19, 2021, at 10:00 a.m**., or as soon thereafter as this motion may be heard, in Courtroom 7B, located at 350 West First Street, Los Angeles, CA 90012, defendant Pressed Juicery, Inc. ("Pressed Juicery") will, and hereby respectfully does, move this Court for an order (1) compelling arbitration of all claims alleged in Plaintiff's Complaint (Dkt. 1) on an individual basis pursuant to the Federal Arbitration Act, 9 U.S.C. § 1, *et seq.*, and (2) dismissing, or alternatively staying, this entire action in favor of arbitration. At that time, Pressed Juicery also will, and hereby respectfully does, move to stay all discovery and initial case scheduling deadlines pending resolution of this Motion.

Pressed Juicery makes this Motion on the grounds that plaintiff Lauren Christian ("Plaintiff") and Pressed Juicery entered into valid and binding agreements to arbitrate "any disputes," including those alleged in the Complaint in the instant case, and Plaintiff unequivocally waived the right to bring a putative class action in each agreement. In other words, Plaintiff agreed to arbitrate these claims against Pressed Juicery strictly on an individual basis. The Court is empowered to dismiss this entire case in favor of arbitration where, as here, all the claims are subject to arbitration. The Court may also stay all case deadlines while it considers this Motion.

Pressed Juicery bases this Motion on this Notice of Motion, the Memorandum of Points and Authorities below, the declarations and exhibits submitted herewith, all pleadings and records on file herein, those matters of which the Court may properly take judicial notice, and such argument and other evidence that may be presented prior to and the Court may consider at the hearing on this Motion.

This Motion is made following the conference of counsel pursuant to L.R. 7-3, which took place on February 2, 2021 and on various dates thereafter.

Manatt, Phelps &
Phillips, LLP
Attorneys At Law
Los Angeles

NOTICE OF MOTION AND MOTION TO
COMPEL ARBITRATION AND DISMISS
AND/OR STAY, NO. 2:20-CV-10919

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Dated:        February 16, 2021              Respectfully submitted,

MANATT, PHELPS & PHILLIPS, LLP


By: /s/ John W. McGuinness
John W. McGuinness
*Counsel for Defendant*
*PRESSED JUICERY, INC.*

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

- 3 -

NOTICE OF MOTION AND MOTION TO
COMPEL ARBITRATION AND DISMISS
AND/OR STAY, NO. 2:20-CV-10919

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ........................................................................................... 1

II. BACKGROUND ............................................................................................ 2

    A.    Plaintiff Voluntarily Enrolled in Pressed Juicery's "Pressed Points" Rewards Programs and Elected to Receive Text Messages. ............................................................................................... 2

    B.    Plaintiff Agreed to Arbitrate All Disputes On an Individual Basis. ....................................................................................................... 4

    C.    Plaintiff Violated Her Agreements to Arbitrate "Any Dispute" On An Individual Basis By Filing This Action. ................................... 6

III. ARGUMENT .............................................................................................. 7

    A.    Any Dispute Regarding the Enforceability and Scope of the At-Issue Arbitration Agreements is Delegated to the Arbitrator. ............. 8

    B.    The Arbitration Provisions Must be Enforced. .................................... 11

    C.    The Arbitration Should Proceed On an Individual Basis. .................. 18

    D.    The Court Should Dismiss this Action In Favor of Arbitration. ........ 18

    E.    The Court Should Stay All Case Deadlines While Considering this Threshold Motion. .......................................................................... 19

IV. CONCLUSION ........................................................................................... 20

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

- i -

NOTICE OF MOTION AND MOTION TO
COMPEL ARBITRATION AND DISMISS
AND/OR STAY, NO. 2:20-CV-10919

**TABLE OF AUTHORITIES**

**Page**

## CASES

*Aetna Life Ins. Co. v. Alla Med. Servs., Inc.*,
    855 F.2d 1470 (9th Cir. 1988) .................................................................. 8

*Am. Express Co. v. Italian Colors Rest.*,
    570 U.S. 228 (2013) ................................................................................ 14

*AT&T Mobility LLC v. Concepcion*,
    563 U.S. 333 (2011) ................................................................. 10, 12, 19

*AT&T Technologies, Inc. v. Comm. Workers of Am.*,
    475 U.S. 643 (1986) ................................................................................ 12

*Bank Leumi, U.S. v. Miramax Distribution Servs., LLC*,
    2018 WL 7568361 (C.D. Cal. Dec. 27, 2018) .................................... 10

*Brennan v. Opus Bank*,
    796 F.3d 1125 (9th Cir. 2015) ................................................................ 9

*Bridge Fund Capital Corp. v. Fastbucks Franchise Corp.*,
    622 F.3d 996 (9th Cir. 2010), *superseded by statute on other grounds* ............. 14

*Brown v. DIRECTTV, LLC*,
    2013 WL 3273811 (C.D. Cal. June 26, 2013) .................................... 18

*Buckeye Check Cashing, Inc. v Cardegna, et al.*,
    546 U.S. 440 (2006) ............................................................................ 9, 12

*Carr v. Credit One Bank*,
    2015 WL 9077314 (S.D.N.Y. Dec. 16, 2015) .................................... 11

*Chiron Corp. v. Ortho Diagnostic Sys., Inc.*,
    207 F.3d 1126 (9th Cir. 2000) ........................................................ 13, 18

*Circuit City Stores, Inc. v. Ahmed*,
    283 F.3d 1198 (9th Cir. 2002) .............................................................. 11

*Citizens Bank v. Alafabco, Inc.*,
    539 U.S. 52 (2002) .................................................................................. 13

*Conrad v. Phone Dirs. Co.*,
    583 F.3d 1376 (10th Cir. 2009) .............................................................. 8

*Crawford v. Beachbody, LLC*,
    2014 WL 6606563 (S.D. Cal. Nov. 5, 2014) ................................ 16, 17

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

- ii -

NOTICE OF MOTION AND MOTION TO
COMPEL ARBITRATION AND DISMISS
AND/OR STAY, NO. 2:20-CV-10919

1
2

**TABLE OF CONTENTS**
(continued)

**Page**

3
4
*Crooks v. Wells Fargo Bank, N.A.*,
   312 F. Supp. 3d 932 (S.D. Cal. 2018) ................................................................. 12

5
*Dean Witter Reynolds Inc. v. Byrd*,
   470 U.S. 213 (1985) ........................................................................................... 12

6
7
*Dickey v. Ticketmaster*,
   2019 WL 9096443 (C.D. Cal. Mar. 12, 2019) .................................................. 16

8
9
*Digital Software Servs., Inc. v. Entm't Programs, Inc.*,
   2010 WL 727610 (E.D. Cal. Mar. 1, 2010) ...................................................... 18

10
*First Options of Chi., Inc. v. Kaplan*,
   514 U.S. 938 (1995) ........................................................................................... 15

11
12
*Fteja v. Facebook, Inc.*,
   841 F. Supp. 2d 829 (S.D.N.Y. 2012) ............................................................... 17

13
14
*Galen v. Redfin Corp.*,
   2015 WL 7734137 (N.D. Cal. Dec. 1, 2015) ...................................................... 9

15
*Graf v. Match.com, LLC*,
   2015 WL 4263957 (C.D. Cal. July 10, 2015) ...................................... 11, 15, 17

16
17
*Green Tree Fin. Corp.-Ala. v. Randolph*,
   531 U.S. 79 (2000) ............................................................................................. 13

18
*Heller v. Rasier*,
   2020 WL 413243 (C.D. Cal. Jan. 7, 2020) ........................................................ 15

19
20
*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
   139 S. Ct. 524 (2019) ........................................................................................... 9

21
*Intertec Contracting v. Turner Steiner Int'l, S.A.*,
   2001 WL 812224 (S.D.N.Y. Jul. 18, 2001) ...................................................... 20

22
23
*Jacobson v. Snap-On Tools Co.*,
   2015 WL 8293164 (N.D. Cal. Dec. 9, 2015) .................................................... 14

24
25
*JS Barkats, PLLC v. BE, Inc.*,
   2013 WL 444919 (S.D.N.Y. Feb. 6, 2013) .......................................................... 8

26
*Knutson v. Sirius XM Radio Inc.*,
   771 F.3d 559 (9th Cir. 2014) ....................................................................... 14, 15

27
28
*Koyoc v. Progress Fin. Co.*,
   2014 WL 1878903 (C.D. Cal. May 9, 2014) ...................................................... 18

Manatt, Phelps &
Phillips, LLP
Attorneys at Law
Los Angeles

- iii -

NOTICE OF MOTION AND MOTION TO
COMPEL ARBITRATION AND DISMISS
AND/OR STAY, NO. 2:20-CV-10919

# TABLE OF CONTENTS
(continued)

**Page**

*Lamkin v. Morinda Props. Weight Parcel, LLC,*
    440 F.App'x 604 (10th Cir. 2011)................................................................. 7

*Lifescan, Inc. v. Premier Diabetic Servs., Inc.,*
    363 F.3d 1010 (9th Cir. 2004)................................................................. 7

*Marchand v. Northrop Grumman Corp.,*
    2017 WL 2633132 (N.D. Cal. June 19, 2017) ................................................. 7

*Marmet Health Care Ctr., Inc. v. Brown,*
    565 U.S. 530 (2012) ................................................................. 19

*McNamara v. Royal Bank of Scotland Grp., PLC,*
    2012 WL 5392181 (S.D. Cal. Nov. 5, 2012) ................................................. 18

*Mohamed v. Uber Techs., Inc.,*
    109 F. Supp. 3d 1185 (N.D. Cal. 2015), *rev'd in part on other grounds,*
    848 F.3d 1201 (9th Cir. 2016)........................................................11, 15, 16, 17

*Momot v. Mastro,*
    652 F.3d 982 (9th Cir. 2011) ................................................................. 10

*Moran v. Charter Commc'ns, Inc.,*
    2020 WL 5833640 (C.D. Cal. June 11, 2020)................................................. 14

*Mortensen v. Bresnan Communs., LLC,*
    722 F.3d 1151 (9th Cir. 2013) ................................................................. 13

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,*
    460 U.S. 1 (1983) ................................................................. 19

*Murphy v. DirecTV, Inc.,*
    724 F.3d 1218 (9th Cir. 2012)................................................................. 19

*Nevarez v. Forty Niners Football Co.,*
    2017 WL 3492110 (N.D. Cal. Aug. 15, 2017)................................................. 16

*New England Mech., Inc. v. Laborers Local Union 294,*
    909 F.2d 1339 (9th Cir. 1990)................................................................. 9

*Nguyen v. Barnes & Noble, Inc.,*
    763 F.3d 1171 (9th Cir. 2014)............................................................ 15, 17

*Paxton v. Macy's W. Stores, Inc.,*
    2018 WL 4297763 (E.D. Cal. Sept. 7, 2018) ................................................. 17

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

- iv -

**TABLE OF CONTENTS**
(continued)

**Page**

*Pinnacle Museum Tower Assn. v. Pinnacle Mkt. Dev. (US), LLC*,
  55 Cal. 4th 223 (2012) ........................................................................... 17

*Ratajesak v. New Prime, Inc.*,
  2019 WL 1771659 (C.D. Cal. Mar. 20, 2019) ........................................ 10

*Rent-A-Center, West, Inc. v. Jackson*,
  561 U.S. 63 (2010) ............................................................................... 8, 9

*Rodriguez v. Experian Serv. Corp.*,
  2015 WL 12656919 (C.D. Cal. Oct. 5, 2015) ................................... 11, 15

*Sanchez v. Valencia Holding Co.*,
  LLC, 61 Cal. 4th 899 (2015) .................................................................. 10

*Simula, Inc. v. Autoliv, Inc.*,
  175 F.3d 716 (9th Cir. 1999) .................................................................. 18

*Sparling v. Hoffman Constr. Co.*,
  864 F.2d 635 (9th Cir. 1988) ............................................................ 19, 20

*Stiener v. Apple Computer, Inc.*,
  2007 WL 4219388 (N.D. Cal. Nov. 29, 2007) ........................................ 20

*Sunvalley Solar, Inc. v. China Elec. Equip. Grp. Corp.*,
  2015 WL 13546433 (C.D. Cal. Oct. 29, 2015), *aff'd sub nom.*, *Sunvalley Solar, Inc. v. CEEG (Shanghai) Solar Sci. & Tech. Co.*, 690 F.App'x 942 (9th Cir. 2017) ...................................................................................... 19

*Swift v. Zynga Game Network, Inc.*,
  805 F. Supp. 2d 904 (N.D. Cal., 2011) ............................................. 16, 17

*Tanis v. Sw. Airlines, Co.*,
  2019 WL 1111240 (S.D. Cal. Mar. 11, 2019) .................................... 16, 17

*Tiri v. Lucky Chances, Inc.*,
  226 Cal. App. 4th 231 (2014) ................................................................... 9

*Tompkins v. 23andMe, Inc.*,
  2014 WL 2903752 (N.D. Cal. June 25, 2014), *aff'd*, 840 F.3d 1016 (9th Cir. 2016) ................................................................................................ 16

*Tompkins v. 23andMe, Inc.*,
  840 F.3d 1016 (9th Cir. 2016) .......................................................... 10, 17

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

- v -

## TABLE OF CONTENTS
(continued)

**Page**

*Uptown Drug Co. v. CVS Caremark Corp.*,
  962 F. Supp. 2d 1172 (N.D. Cal. 2013).............................................................. 11

*Ware v. Golden 1 Credit Union, Inc.*,
  375 F. Supp. 3d 1145 (E.D. Cal. 2019) .............................................................. 13

## STATUTES

9 U.S.C. § 2..................................................................................................9, 12, 13

9 U.S.C. § 3................................................................................................................ 20

9 U.S.C. § 4................................................................................................................ 13

Federal Arbitration Act.....................................................................................passim

Telephone Consumer Protection Act, 47 U.S.C. § 227...................................passim

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

- vi -

NOTICE OF MOTION AND MOTION TO
COMPEL ARBITRATION AND DISMISS
AND/OR STAY, NO. 2:20-CV-10919

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

Plaintiff Lauren Christian ("Plaintiff") *twice* expressly agreed to arbitrate "any dispute" with defendant Pressed Juicery, Inc. ("Pressed Juicery") on an individual basis only—once when she agreed to the terms and conditions for Pressed Juicery's "Pressed Points" customer rewards program, and again when she agreed to Pressed Juicery's text messaging terms and conditions.   Indeed, both sets of terms and conditions contain clear and conspicuous mandatory dispute resolution provisions that require Plaintiff's claims to be arbitrated in accordance with the Commercial Arbitration Rules and the Supplementary Procedures for Consumer Related Disputes (collectively, "AAA Rules") of the American Arbitration Association ("AAA") and to be administered by the AAA—*i.e.*, **not litigated in this Court or any other court**. Further, Plaintiff's putative class claims are prohibited by the foregoing terms and conditions, pursuant to which Plaintiff expressly waived any right she may have to bring or participate in a class action lawsuit against Pressed Juicery.  Moreover, while Plaintiff may contend—incorrectly—that her claims are outside the ambit of the arbitration provisions, Plaintiff expressly delegated that issue to the arbitrator.

Notwithstanding the parties' multiple agreements to arbitrate all of their disputes, Plaintiff filed her Complaint against Pressed Juicery in this Court on December 1, 2020, alleging violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq*. (the "TCPA") based on her purported receipt of certain text messages, and seeking class treatment.  *See generally* Dkt. 1 ("Complaint" or "Compl.").  Because Plaintiff unequivocally agreed to arbitrate her claims only on an individual basis, Pressed Juicery seeks here to compel such an arbitration, and to dismiss Plaintiff's claims in favor of, or stay them pending completion of, arbitration. Pressed Juicery also seeks to stay discovery and other scheduling deadlines while the Court considers this threshold Motion for the sake of judicial and party economy.

As shown below, the Federal Arbitration Act ("FAA") creates a strong

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

- 1 -

NOTICE OF MOTION AND MOTION TO
COMPEL ARBITRATION AND DISMISS
AND/OR STAY, NO. 2:20-CV-10919

presumption in favor of enforcing arbitration provisions, including provisions delegating the authority to an arbitrator to determine threshold issues of enforceability and scope of arbitration agreements, and requires courts to enforce arbitration agreements according to their terms—especially where, like here, the parties seek to achieve streamlined proceedings and expeditious results. Given this, and because the broad scope of the binding arbitration clauses at issue here plainly apply to all of Plaintiff's claims alleged in the Complaint—claims which stem directly from her signing up for Pressed Juicery's customer rewards program and for text messages—the Court should grant this Motion and enter an order compelling Plaintiff to submit to an individual arbitration and dismissing or staying this action.

## II.   BACKGROUND

### A.   Plaintiff Voluntarily Enrolled in Pressed Juicery's "Pressed Points" Rewards Programs and Elected to Receive Text Messages.

Pressed Juicery operates over 75 retail stores located in five states and sells a variety of juice and other food products, both online and in-store. *See* Declaration of Blaine LaBron ("LaBron Decl."), filed herewith, at ¶ 2. Like many retailers, Pressed Juicery has a customer rewards program—here, called the "Pressed Points Program" or "Pressed Points"—where customers can earn points for every purchase that can be redeemed for free products and discounts, among other things. *Id.* at ¶ 5. In addition, like many retailers, Pressed Juicery customers can also "opt-in" (*i.e.*, agree) to receive text messages, informing them of the status of orders and of special Pressed Juicery discounts and promotions (hereinafter, "Text Messaging"). *Id.* By voluntarily enrolling in Pressed Points, new customers can receive a free juice "shot." *Id.* They are not required to opt-in for Text Messaging to enroll in Pressed Points. *Id.* at ¶ 9.

In this case, Plaintiff indisputably enrolled in the Pressed Points Program and opted-in for Text Messaging on January 7, 2020. *Id.* at ¶¶ 13-14 and Exhibit ("Ex.") E thereto; *see also* Compl., ¶¶ 19-21. Though Plaintiff voluntarily signed up for Pressed Points and Text Messaging and received her free "shot" minutes later that

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

- 2 -

NOTICE OF MOTION AND MOTION TO
COMPEL ARBITRATION AND DISMISS
AND/OR STAY, NO. 2:20-CV-10919

same day (as well as valuable offers and discounts), she did not make any purchases at that time.  *See* LaBron Decl. at ¶¶ 12-17 & Exs. D and E thereto.

Importantly, Pressed Juicery does *not* have an "electronic system" or the like at *any* of its stores for this purpose, nor is signing up for Pressed Points part of the "checkout" process.  *Id.* at ¶¶ 6, 16.  It is also *not* Pressed Juicery's procedure for employees to "take down" or "input" information into the Pressed Points sign-up page, in order to protect consumer privacy.  *Id.* at ¶ 6. Instead, *all* customers (including Plaintiff) must voluntarily sign up for Pressed Points and Text Messaging *themselves*, either in-store using their own smart phone or other computing device or at their home on such a device, via Pressed Juicery's website.  *Id.* at ¶¶ 6-7 & Ex. A.

More specifically, to sign up for Pressed Points or to opt-in for Text Messaging, customers must navigate Pressed Juicery's website, expressly agree to be bound by certain terms and conditions, and voluntarily enter various personal information about themselves, including their name, email address, zip code, birthdate, a password, and cell phone number.  *Id.* at ¶¶ 8-10 & Ex. A.  In doing so, the customer must affirmatively check two boxes, signifying their assent to two sets of terms and conditions—specifically, the "Pressed Points Program Terms of Use" and the "Pressed Juicery Messaging Terms and Conditions"—which are hyperlinked on the sign up page.  *Id.* at ¶¶ 8-9, 11 & Exs. B and C thereto.  In fact, a customer cannot complete their Pressed Points enrollment without checking these boxes, which are not pre-checked and appear directly above the "SIGN UP FOR POINTS" button. *Id.* at ¶¶ 8-10.[1]  Further, not only is the text next to these checkboxes in a noticeable easy-to-read red font and in plain language, but the hyperlinks are also underlined (and for the Text Messaging terms, the hyperlink is in blue font); and clicking on the

---

[1] Because a customer can sign up for Pressed Points without opting-in for Text Messaging, only the Pressed Points checkbox needs to be checked to enroll.  *Id.* at ¶ 9.  Here, Plaintiff signed up in-store for both Pressed Points and Text Messaging, affirmatively checking both boxes.  *Id.* at ¶¶ 14, 16 & Exs. D and E.  Though she does not describe the sign-up process accurately, Plaintiff admits to checking the two boxes and hitting the sign up button herself nevertheless while signing up in store. *See* Compl., ¶ 20.  *See also* LaBron Decl., ¶ 16 & Exs. D and E thereto.

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

- 3 -

NOTICE OF MOTION AND MOTION TO
COMPEL ARBITRATION AND DISMISS
AND/OR STAY, NO. 2:20-CV-10919

either of those links takes the customer directly to the terms and conditions further described below, so that the customer need not agree to them without having had the opportunity to read them. *Id.* at ¶¶ 10-11 & Exs. A - C.

**B.    Plaintiff Agreed to Arbitrate All Disputes On an Individual Basis.**

The "Pressed Points Program Terms of Use" and the "Pressed Juicery Messaging Terms and Conditions" (collectively, the "Terms") contain a binding arbitration clause. *See* LaBron Decl., Exs. B & C thereto. For the Pressed Points Program Terms of Use, the arbitration provision broadly provides, in pertinent part:

> You and [Pressed Juicery] agree that … ***any dispute, claim or controversy arising out of or relating in any way to our services***, including, without limitation our Pressed Points Program, your account(s), our online store, ***promotional offers***, user interfaces, our Privacy Policy or our privacy practices generally, these Terms of Use, and this Arbitration Agreement, shall be determined by binding arbitration. [] BY AGREEING TO THESE TERMS, THE U.S. FEDERAL ARBITRATION ACT GOVERNS THE INTERPRETATION AND ENFORCEMENT OF THIS PROVISION, AND THAT YOU AND WE ARE EACH WAIVING THE RIGHT TO A TRIAL BY JURY OR TO PARTICIPATE IN A CLASS ACTION. This arbitration provision shall survive termination of these Terms of Use and the termination of your account(s).

*Id.,* Ex. B at p. 4 (emphasis added; capitalized portion appears in original). The first page also states that: "[b]y signing up for our Pressed Points Program ('Pressed Points'), you agree to be bound by these Terms of Use, Pressed Juicery's Privacy Policy at https://www.pressedjuicery.com/legal/privacy-policy, and for Pressed Juicery to send you emails and texts about your Pressed Points account and promotional ads," immediately followed in large, bold font by "**[i]f you do not agree to these Terms of Use, do not sign up for or participate in the Pressed Points Program**." *Id.*, Ex. B at p. 1. Customers also acknowledge that the Pressed Points Program Terms of Use, including all documents referenced therein, "represent the entire understanding between [the customer] and Pressed Juicery with respect to the Pressed Points Program, and supersede any other agreements, statements, or representations with respect to the Pressed Points Program." *Id*., Ex. B at p. 9.

Similarly, the arbitration provision in the Messaging Terms and Conditions

(optional, if the user also wants Text Messaging) broadly provides, in pertinent part:

> [Y]ou and Pressed Juicery agree that ***any dispute arising out of or in any way related to these messaging terms and conditions ("Messaging Terms") or your receipt of text messages from Pressed Juicery or its service providers will be resolved by binding arbitration.*** [] This agreement to arbitrate disputes includes all claims ***arising out of or in any way related*** to these Messaging Terms, ***or your receipt of text messages from Pressed Juicery or its service providers*** whether based in contract, tort, statute, fraud, misrepresentation, or any other legal theory, and regardless of when a claim arises. YOU UNDERSTAND AND AGREE THAT, BY AGREEING TO THESE MESSAGING TERMS, YOU AND Pressed Juicery [*sic*] ARE EACH WAIVING THE RIGHT TO A TRIAL BY JURY OR TO PARTICIPATE IN A CLASS ACTION AND THAT THESE MESSAGING TERMS SHALL BE SUBJECT TO AND GOVERNED BY THE FEDERAL ARBITRATION ACT.

*Id.*, Ex. C at p. 2 (emphasis added; capitalized portion appears in original).

Importantly for present purposes, both sets of Terms provide that the arbitrator ***has <u>sole</u> authority to determine the arbitrability of any claims***, and contain additional equally-conspicuous class action waiver clauses. *Id.,* Ex. B at p. 5 & Ex. C at p. 2. In fact, the Pressed Points Program Terms of Use clearly state that "[t]he arbitrator shall determine ***any and all*** challenges to the arbitrability of a claim" and that "[a]ll issues are for the arbitrator to decide, including issues relating to the scope and enforceability of this Arbitration Agreement." *Id.,* Ex. B at p. 5 (emphasis added). The Pressed Points Program Terms of Use also state, in a bold and capitalized font: "**Class Action Waiver. YOU AND PRESSED AGREE THAT EACH MAY BRING CLAIMS AGAINST THE OTHER ARISING FROM OR RELATING IN ANY WAY TO PRESSED JUICERY'S PRESSED POINTS PROGRAM ONLY IN AN INDIVIDUAL CAPACITY AND NOT AS A PLAINTIFF OR CLASS MEMBER IN ANY PURPORTED CLASS OR REPRESENTATIVE PROCEEDING**." *Id.,* Ex. B at p. 8 (emphasis in original).

The Messaging Terms and Conditions similarly state that "[t]he arbitrator has ***exclusive authority*** to resolve any dispute relating to the interpretation, applicability, or enforceability of this binding arbitration agreement." *Id.,* Ex. C at p. 2 (emphasis added). They also state in a capitalized font: "No Class Actions. YOU AND Pressed

Juicery [*sic*] AGREE THAT EACH MAY BRING CLAIMS AGAINST THE OTHER ONLY IN AN INDIVIDUAL CAPACITY AND NOT AS A PLAINTIFF OR CLASS MEMBER IN ANY PURPORTED CLASS OR REPRESENTATIVE PROCEEDING." *Id.,* Ex. C at p. 3.  As is evident, both sets of Terms are quite short (only a few pages in length), in a large easy-to-read font, easy to locate on the signup page, and presented in plain language designed to be understandable by the average consumer—in fact, there are helpful explanations provided on what arbitration entails. *See, e.g., id.,* Ex. B at p. 4.  ("Arbitration is more informal than a lawsuit in court. Arbitration uses a neutral arbitrator instead of a judge or jury, allows for more limited discovery than in court, and is subject to very limited review by courts.").

Further, the Terms both provide, *inter alia*, that the arbitration is to be governed by the FAA and the "Commercial Dispute Resolution Procedures and Supplementary Procedures for Consumer Related Disputes" of the AAA.  *Id.,* Ex. B at p. 5 & Ex. C at p. 2.  Moreover, the Pressed Points Program Terms of Use gave Plaintiff the right to "opt-out" of the arbitration and class action waiver provisions in writing within 30 days of signing up, but Plaintiff never opted out.  *Id.* at ¶ 18 & Ex. B at pp. 7-8.  And by also signing up for Text Messaging and checking the corresponding box on the Pressed Points sign-up page, Plaintiff expressly and undisputedly agreed "to receive recurring automated marketing text messages from Pressed Juicery at the cell number [she] used when signing up." *Id.,* Ex. A at p. 4.

Lastly, the Terms clearly indicate that the arbitration provisions survive any termination of Pressed Points or Text Messaging.  Indeed, as noted above, the Pressed Points Program Terms of Use state: "This arbitration provision shall survive termination of these Terms of Use and the termination of your account(s)." *Id.,* Ex. B at p. 4.  The Messaging Terms likewise state: "This agreement to arbitrate disputes includes all claims … regardless of when a claim arises." *Id.,* Ex. C at p. 2.

### C.   Plaintiff Violated Her Agreements to Arbitrate "Any Dispute" On An Individual Basis By Filing This Action.

Despite unequivocally agreeing to arbitrate "any dispute" with Pressed Juicery multiple times as discussed above,[2] Plaintiff asks this Court to rule on her claims, as set forth in her putative class action Complaint filed on December 1, 2020.  In sum, she alleges that, on four occasions in February and November 2020, she received marketing texts sent using an "automatic telephone dialing system" by Pressed Juicery, or by a third party acting on its behalf, after she allegedly revoked her "prior express written consent" to receive such messages, in violation of Section 227(b) of TCPA.  *See* Compl., ¶¶ 23-26.  Despite clearly waiving this right, Plaintiff also seeks to represent a nationwide class of similarly situated persons.  *Id*., ¶ 37.

## III.  **ARGUMENT**

Under the FAA, Plaintiff should be compelled to arbitrate all of her claims against Pressed Juicery on an individual basis.[3]  Plaintiff has agreed to the Pressed Points Program Terms of Use and Pressed Juicery Messaging Terms and Conditions, pursuant to which Plaintiff agreed to ***mandatory*** arbitration and waived her right to participate in a class action.  Accordingly, as discussed below, the Court should compel individual arbitration of this dispute for at least two independent reasons: (1)

---

[2] Plaintiff agreed to arbitrate an additional time, as the Pressed Points Program Terms of Use are hyperlinked in a blue font and incorporated by reference into the Messaging Terms and Conditions.  *Id*., Ex. C at p. 1 ("You also agree to our Pressed Juicery [Pressed Points] Terms of Use and Pressed Juicery Privacy Policy.").

[3] This motion addresses only the parties' agreement to arbitrate because the Court's role in ruling on a petition to compel arbitration does not include consideration of the underlying merits.  *See Lifescan, Inc. v. Premier Diabetic Servs., Inc.,* 363 F.3d 1010, 1012 (9th Cir. 2004).  Nevertheless, the Complaint lacks merit for several reasons, which Pressed Juicery will present to the arbitrator, and this Motion satisfies Pressed Juicery's immediate obligation to respond to the Complaint.  *See Lamkin v. Morinda Props. Weight Parcel, LLC*, 440 F.App'x 604, 607 (10th Cir. 2011) (citation omitted); *see also Marchand v. Northrop Grumman Corp.,* 2017 WL 2633132, at *6 (N.D. Cal. June 19, 2017) (finding that the time to file answer had not elapsed in light of defendant's motion to compel arbitration); *JS Barkats, PLLC v. BE, Inc.,* 2013 WL 444919, at *2 (S.D.N.Y. Feb. 6, 2013) ("[P]arties are permitted to file motions to stay in lieu of an answer or other dispositive motions.") (citing *Lamkin*).  Should the Court not compel arbitration, however, Pressed Juicery reserves the right to file a substantive motion to dismiss or another responsive pleading at a later date in accordance with any schedule set by the Court.  *See Aetna Life Ins. Co. v. Alla Med. Servs., Inc.,* 855 F.2d 1470, 1475 (9th Cir. 1988); *see also Conrad v. Phone Dirs. Co.,* 583 F.3d 1376, 1382 n.2 (10th Cir. 2009) (a party may file a Rule 12 motion to dismiss complaint following denial of motion to compel arbitration).

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

- 7 -

NOTICE OF MOTION AND MOTION TO
COMPEL ARBITRATION AND DISMISS
AND/OR STAY, NO. 2:20-CV-10919

1   the arbitrator, and not the Court, should determine arbitrability; and (2) even if the

2   Court reaches the question of arbitrability, it must still compel arbitration.

3   **A.   Any Dispute Regarding the Enforceability and Scope of the At-Issue Arbitration Agreements is Delegated to the Arbitrator.**

4

5   The arbitrator, not the Court, should decide whether the parties entered into a

6   valid arbitration agreement and the scope of that agreement.  Federal law permits

7   parties to arbitrate the two threshold questions of arbitrability, namely whether the

8   arbitration agreement is valid and whether its scope covers the claims at issue.  *See*

9   *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 68-69 (2010) (holding that

10  "[p]arties can agree to arbitrate 'gateway' questions of arbitrability, such as whether

11  the parties have agreed to arbitrate or whether their agreement covers a particular

12  controversy," and that a federal court must enforce parties' "agreement to arbitrate

13  threshold issues").  Importantly, "unless [a plaintiff] challenge[s] [a] delegation

14  provision specifically, [a court] must treat it as valid … and must enforce it … ,

15  leaving any challenge to the validity of the [agreement to arbitrate] as a whole for the

16  arbitrator."  *Id.* at 72.[4]  Thus, if the at-issue contract "clear[ly] and unmistakab[ly]"

17  delegates this question to the arbitrator, *id*. at 79, "a court may not override the

18  contract" and "possesses no power to decide the arbitrability issue."  *Henry Schein,*

19  *Inc. v. Archer & White Sales, Inc.,* 139 S. Ct. 524, 529 (2019).

20  Moreover, an arbitration clause that delegates validity issues to the arbitrator

21  is considered effective when it is: (1) clear and unmistakable; and (2) not revocable

22  under state law doctrines such as fraud, duress, or unconscionability.  *See Galen v.*

23  *Redfin Corp.*, 2015 WL 7734137, at *5 (N.D. Cal. Dec. 1, 2015) (citing *Tiri v. Lucky*

24  *Chances, Inc*., 226 Cal. App. 4th 231, 242 (2014); *Rent-A-Center*, 561 U.S. at 70

---

25  [4] Also under *Rent-A-Center*, "a party's challenge to another provision of the contract,
26  or to the contract as a whole, does not prevent a court from enforcing a specific
    agreement to arbitrate" because "'[a]s a matter of substantive federal arbitration law,
    an arbitration provision is severable from the remainder of the contract.'" *Id.* at 71-
27  72 (quoting *Buckeye Check Cashing, Inc. v Cardegna, et al.*, 546 U.S. 440, 445
    (2006) (citing 9 U.S.C. § 2).  In addition, in this instance, the Terms each have a
28  separate severability clause.  *See* LaBron Decl., Ex. B at p. 4 & Ex. C at p. 2.

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

- 8 -

NOTICE OF MOTION AND MOTION TO
COMPEL ARBITRATION AND DISMISS
AND/OR STAY, NO. 2:20-CV-10919

n.1). The Supreme Court has held that a delegation clause is clear and unmistakable where, as here, it "explicitly assigns [the issue of arbitrability] to the arbitrator." *Rent-A-Center,* 561 U.S. at 65. *See also New England Mech., Inc. v. Laborers Local Union 294*, 909 F.2d 1339, 1345 (9th Cir. 1990) (where parties "clearly and unmistakably" delegate arbitrability, "courts will be divested of that authority" and an arbitrator will decide in the first instance of whether a dispute is arbitrable).

Here, the Pressed Points Program Terms of Use unambiguously provide that "[t]he arbitrator shall determine *any and all challenges* to the arbitrability of a claim" and that "[a]ll issues are for the arbitrator to decide, *including issues relating to the scope and enforceability* of this Arbitration Agreement." LaBron Decl., Ex. B at p. 5 (emphasis added). Similarly, the Messaging Terms and Conditions provide "[t]he arbitrator has *exclusive authority* to resolve any dispute relating to the interpretation, applicability, or enforceability of this binding arbitration agreement." *Id.,* Ex. C at p. 2 (emphasis added). The parties also expressly agreed the arbitration would be conducted pursuant to the AAA Rules and will be administered by the AAA. *Id.,* Ex. B at p. 5 & Ex. C at p. 2. *See also Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015) ("[V]irtually every circuit to have considered the issue has determined that incorporation of the AAA arbitration rules constitutes clear and unmistakable evidence that the parties agreed to arbitrate arbitrability.") (internal quotations and alterations omitted). Thus, the parties "clearly and unmistakably agreed to delegate to the arbitrator any disputes about the scope of arbitration over the claims Plaintiff raises in this action" through the contract language "requiring arbitration of disputes over the 'scope or applicability' of arbitration." *Bank Leumi, U.S. v. Miramax Distribution Servs., LLC,* 2018 WL 7568361, at *6 (C.D. Cal. Dec. 27, 2018) (citing *Momot v. Mastro*, 652 F.3d 982, 988 (9th Cir. 2011)).

Further, though Plaintiff has not challenged the validity of the delegation clauses in the applicable agreements here (nor can she credibly do so), nothing suggests the delegation is revocable under state law here. *See, e.g.*, *Ratajesak v. New*

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

- 9 -

NOTICE OF MOTION AND MOTION TO
COMPEL ARBITRATION AND DISMISS
AND/OR STAY, NO. 2:20-CV-10919

*Prime, Inc.,* 2019 WL 1771659, at \*7 (C.D. Cal. Mar. 20, 2019) (upholding similar delegation clause against an unconscionability challenge).  Therefore, the arbitrator, not this Court, must decide all other defenses to the validity of the arbitration agreement, including duress and unconscionability, in this matter.

In any event, the arbitration provisions in the Terms, and in turn the delegation clauses therein, are not procedurally or substantively unconscionable under applicable law,[5] particularly as the, *inter alia*: (1) are mutual and appealable; (2) provide that the arbitration will occur in the same county as the consumer's billing address; (3) allow consumers to opt out of arbitration; (4) provide a convenient and cost-effective forum for parties to resolve disputes; (5) give consumers the option to conduct the arbitration by phone or through documentary submissions; (6) require Pressed Juicery to reimburse the consumer for the filing fee; (7) are not lengthy, are stated in plain language, and are presented in an easy-to-read and noticeable font; and (8) are subject to the consumer-friendly AAA Rules.  *See generally* LaBron Decl. & Exs, B and C thereto.  *See also Graf v. Match.com, LLC*, 2015 WL 4263957, at \*4-5 (C.D. Cal. July 10, 2015) (finding similar arbitration provision was not substantively unconscionable where, *inter alia*, it conspicuously appeared in capitalized letters and was not overly harsh or oppressive); *Rodriguez v. Experian Serv. Corp.*, 2015 WL 12656919, at \*2-3 (C.D. Cal. Oct. 5, 2015) (arbitration clause in hyperlinked "terms of use" on defendant's website, similar to Pressed Juicery's, were not procedurally or substantively unconscionable); *Circuit City Stores, Inc. v. Ahmed*, 283 F.3d 1198, 1199-1200 (9th Cir. 2002) (holding that an opportunity to opt out precludes finding of procedural unconscionability); *Mohamed*, 836 F.3d at 1111 (delegation clause not

---

[5] *See Tompkins v. 23andMe, Inc.*, 840 F.3d 1016, 1023 (9th Cir. 2016) (finding that arbitration provision was not unconscionable, noting that under California law, "[u]nconscionability has 'both a procedural and a substantive clement, the former focusing on oppression or surprise due to unequal bargaining power, the latter on overly harsh or one-sided results.'") (quoting *Sanchez v. Valencia Holding Co., LLC*, 61 Cal.4th 899, 910 (2015)); *Concepcion*, 563 U.S. at 346-47 (enforcing binding arbitration provision in an alleged "adhesion" contract, noting "the times in which consumer contracts were anything other than adhesive are long past.").  *See also* LaBron Decl., Ex. B at p. 9  (Pressed Points Terms, California choice of law).

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

- 10 -

NOTICE OF MOTION AND MOTION TO
COMPEL ARBITRATION AND DISMISS
AND/OR STAY, NO. 2:20-CV-10919

procedurally unconscionable due to 30-day opt-out provision); *Uptown Drug Co. v. CVS Caremark Corp.,* 962 F. Supp. 2d 1172, 1182 (N.D. Cal. 2013) (finding that because plaintiff "has not shown that the arbitration clause is procedurally unconscionable to any degree, the court need not inquire into whether the agreement is substantively unconscionable" under California law); *Carr v. Credit One Bank*, 2015 WL 9077314, at \*3 (S.D.N.Y. Dec. 16, 2015) (arbitration clause was not substantively unconscionable where, *inter alia*, it did not foreclose plaintiff's TCPA claims, was enforceable by either party, and permitted appeals).  Indeed, there is nothing in the arbitration provisions at issue here that is unreasonably favorable to Pressed Juicery (if anything, they favor Plaintiff), and Plaintiff had a meaningful opportunity to read the Terms, which were clear and conspicuous and not buried in fine print or presented in complex "legalese."  Further, there was certainly no duress, as Plaintiff voluntarily signed up herself via Pressed Juicery's website, using her own phone or other device(s) she had on hand, did not purchase anything, and could have simply stepped out of line.  *See* LaBron Decl., ¶¶ 6, 12-17 and Exs. D and E thereto. Nevertheless, as discussed above, the parties delegated these issues to the arbitrator, and the Court must honor that agreement and allow the arbitrator to decide them.[6]

## B.     The Arbitration Provisions Must be Enforced.

As the United States Supreme Court aptly noted, "[t]he 'principal purpose' of the FAA is to 'ensur[e] that private arbitration agreements are enforced according to their terms.'" *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 344 (2011) (internal citation omitted).   In this regard, Section 2 of the FAA provides that written arbitration provisions in "a contract evidencing a transaction involving commerce …

---

[6] To the extent Plaintiff argues she terminated the at-issue agreements by allegedly sending a "STOP" request in response to a text message, that is of no moment here. The Terms expressly provide that the arbitration provision therein survives termination, as noted above. *Cf. Crooks v. Wells Fargo Bank, N.A.*, 312 F. Supp. 3d 932, 938 (S.D. Cal. 2018) ("[T]he arbitration provision explicitly provides, 'This Arbitration Provision shall survive any termination, payoff or transfer of this contract.' Thus, by its express terms, even if the Contract was terminated as a result of Plaintiff's bankruptcy discharge, the arbitration provision survives.").

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

- 11 -

NOTICE OF MOTION AND MOTION TO
COMPEL ARBITRATION AND DISMISS
AND/OR STAY, NO. 2:20-CV-10919

shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.

Moreover, the FAA strongly favors enforcement of arbitration agreements and places arbitration agreements on equal footing with all other contracts. *See Cardegna*, 546 U.S. at 443-44 (citing 9 U.S.C. § 2). In determining whether a particular dispute should be arbitrated, the FAA leaves "no place for the exercise of discretion." *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 218, 221 (1985) (holding that federal courts must "rigorously enforce agreements to arbitrate"). Rather, if a court finds a valid agreement to arbitrate exists and that it encompasses the dispute, the FAA ***requires*** the court to refer the matter to arbitration. *Id.*

Additionally, the merits of the underlying dispute cannot be considered when deciding a motion to compel arbitration. *See AT&T Technologies, Inc. v. Comm. Workers of Am.*, 475 U.S. 643, 649-50 (1986). Instead, this Court may, at most, determine <u>only</u>: (1) whether a valid arbitration agreement exists, and, if so, (2) whether the arbitration agreement encompasses the dispute at issue. *See Chiron Corp. v. Ortho Diagnostic Sys., Inc*., 207 F.3d 1126, 1130 (9th Cir. 2000) (citing 9 U.S.C. § 4); *see also Ware v. Golden 1 Credit Union, Inc*., 375 F. Supp. 3d 1145, 1150 (E.D. Cal. 2019) (same). If the response is affirmative on both counts, as it is in the present case, "the [FAA] requires the court to enforce the arbitration agreement in accordance with its terms." *Chiron,* 207 F.3d at 1130. Importantly, the party challenging the arbitration clause (here, Plaintiff) "bear[s] the burden of proving that the provision is unenforceable" based on validity and scope. *Mortensen v. Bresnan Communs., LLC*, 722 F.3d 1151, 1157 (9th Cir. 2013) (citing *Green Tree Fin. Corp.- Ala. v. Randolph*, 531 U.S. 79, 91 (2000)). Plaintiff cannot meet her burden.

### 1. The FAA Applies to the At-Issue Arbitration Provisions.

The FAA applies to the instant arbitration provisions because they are written provisions in a "contract evidencing a transaction involving commerce." 9 U.S.C. § 2. The United States Supreme Court has interpreted the term "involving commerce"

as used in the FAA to be "the functional equivalent of the more familiar 'affecting commerce'—words of art that ordinarily signal the broadest permissible exercise of Congress' Commerce Clause power." *Citizens Bank v. Alafabco, Inc*., 539 U.S. 52, 56 (2002) (finding requisite commerce for FAA coverage even when individual transaction did not have "any specific effect upon interstate commerce" because defendant engaged in business of the type at issue in multiple states).

Here, the Pressed Juicery agreements at issue, and its business generally, indisputably "affect commerce" because the services offered to Plaintiff included promotions and product discounts. But, in any event, the arbitration provision in the Pressed Points Program Terms of Use expressly and unambiguously provides (in capitalized font): "YOU AGREE THAT, BY AGREEING TO THESE TERMS, THE U.S. FEDERAL ARBITRATION ACT GOVERNS THE INTERPRETATION AND ENFORCEMENT OF THIS PROVISION." LaBron Decl., Ex. B at p. 4. Similarly, the arbitration provision in the Messaging Terms and Conditions expressly and unambiguously provides, in pertinent part and also capitalized font: "YOU UNDERSTAND AND AGREE THAT, BY AGREEING TO THESE MESSAGING TERMS … THAT THESE MESSAGING TERMS SHALL BE SUBJECT TO AND GOVERNED BY THE FEDERAL ARBITRATION ACT." *Id*., Ex. C at p. 2.

Given the foregoing provisions, this Court should enforce the parties' clear and unequivocal agreements to apply the FAA in this case. *See Am. Express Co. v. Italian Colors Rest*., 570 U.S. 228, 233 (2013) ("courts must 'rigorously enforce' arbitration agreements according to their terms, including terms that 'specify with whom [the parties] choose to arbitrate their disputes, and 'the rules under which that arbitration will be conducted'") (internal citation and emphasis omitted).

> 2.   *The At-Issue Arbitration Agreements Are Valid and Binding.*

The at-issue arbitration agreements are also valid and binding. On this front, Pressed Juicery, as the party seeking to compel arbitration, bears the burden of proving "the existence of an agreement to arbitrate" only "by a preponderance of the

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

- 13 -

NOTICE OF MOTION AND MOTION TO
COMPEL ARBITRATION AND DISMISS
AND/OR STAY, NO. 2:20-CV-10919

evidence." *Moran v. Charter Commc'ns, Inc.*, 2020 WL 5833640, at *2 (C.D. Cal. June 11, 2020) (citing *Knutson v. Sirius XM Radio Inc.*, 771 F.3d 559, 565 (9th Cir. 2014)).  *See also Jacobson v. Snap-On Tools Co.*, 2015 WL 8293164, at *2 (N.D. Cal. Dec. 9, 2015) (citing *Bridge Fund Capital Corp. v. Fastbucks Franchise Corp.,* 622 F.3d 996, 1005 (9th Cir. 2010), *superseded by statute on other grounds*). However, once the moving party establishes the existence of an arbitration agreement, the burden shifts to the opposing party to establish the factual basis for a defense to enforcement.  *Id.*[7]  Again, Plaintiff cannot meet her burden here.

"When deciding whether a valid arbitration agreement exists, courts generally apply 'ordinary state-law principles that govern the formation of contracts.'" *Heller v. Rasier*, 2020 WL 413243, at *5 (C.D. Cal. Jan. 7, 2020) (quoting *First Options of Chi., Inc. v. Kaplan,* 514 U.S. 938, 944 (1995)).  Further, "[w]hile new commerce on the Internet has exposed courts to many new situations, it has not fundamentally changed the principles of contract." *Nguyen v. Barnes & Noble, Inc.*, 763 F.3d 1171, 1175 (9th Cir. 2014).  "[U]nder California law, mutual assent is a required element of contract formation." *Knutson*, 771 F.3d at 565.  "Mutual assent may be manifested by written or spoken words, or by conduct and acceptance of contract terms may be implied through action or inaction." *Id.* (internal citations and quotation marks omitted).  Internet agreements, such as Pressed Juicery's Terms described above, are valid and enforceable where, as here: (1) "the user is required to affirmatively acknowledge the agreement before proceeding with use of the website," or (2) "the website puts a reasonably prudent user on inquiry notice of the terms of the contract," which "depends on the design and content of the website and the agreement's webpage." *Nguyen*, 763 F.3d at 1176-77.  Under California law, "it is essentially irrelevant whether a party actually reads [a] contract or not" in determining whether

---

[7]  The Complaint includes allegations suggesting that Plaintiff may assert unconscionability and/or duress as a defense in response to this Motion. *See* Compl., ¶¶ 19-20.  While those allegations are demonstrably false, the parties delegated those issues to the arbitrator to decide, as discussed above.  *See* Section III.A., *supra*.

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

- 14 -

NOTICE OF MOTION AND MOTION TO
COMPEL ARBITRATION AND DISMISS
AND/OR STAY, NO. 2:20-CV-10919

a valid contract exists, "so long as the individual had a legitimate **_opportunity_** to review it." *Mohamed v. Uber Techs., Inc.*, 109 F. Supp. 3d 1185, 1198 (N.D. Cal. 2015), *rev'd in part on other grounds*, 848 F.3d 1201 (9th Cir. 2016) (citation omitted, emphasis in original).

For example, in *Graf v. Match.com, LLC*, 2015 WL 4263957 (C.D. Cal. July 10, 2015), this Court ruled that users of Match.com's website agreed to an arbitration provision in the Terms of Use "when they clicked on a 'Continue' or other similar button on the registration page where it was explained that by clicking on that button, the user was affirming that they would be bound by the Terms of Use, which were always hyperlinked and available for review." *Id.* at *4; *see also Rodriguez,* 2015 WL 12656919, at *2 (finding assent to an arbitration clause in a terms of use when the "Website contained a hyperlink to the Terms of Use at the bottom of every page and included an express disclosure and acknowledgement, which stated 'By clicking the button above ... you agree to our Terms of Use,'" which were hyperlinked); *Dickey v. Ticketmaster*, 2019 WL 9096443, at *6–7 (C.D. Cal. Mar. 12, 2019) (ruling similarly). Numerous other Ninth Circuit courts have reached similar conclusions in internet contract cases like the one at bar. *See, e.g., Tompkins v. 23andMe, Inc.*, 2014 WL 2903752, *7-9 (N.D. Cal. June 25, 2014) (finding plaintiffs received adequate notice of terms of service when "each named Plaintiff clicked a box or button that appeared near a hyperlink to the [Terms of Service] to indicate acceptance"), *aff'd*, 840 F.3d 1016 (9th Cir. 2016); *Swift v. Zynga Game Network, Inc.,* 805 F. Supp. 2d 904, 911-12 (N.D. Cal., 2011) (concluding that where a user was provided with an opportunity to review the terms of service in the form of a hyperlink immediately below the acceptance button, the user had agreed to the terms and was bound by them); *Nevarez v. Forty Niners Football Co.,* 2017 WL 3492110, at *7-8 (N.D. Cal. Aug. 15, 2017) (finding arbitration agreement valid where the user must either click "Accept and Continue," "Sign In," or "Submit Order" and that below those buttons

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

- 15 -

NOTICE OF MOTION AND MOTION TO
COMPEL ARBITRATION AND DISMISS
AND/OR STAY, NO. 2:20-CV-10919

is the sentence "By continuing past this page, you agree to our terms of use").[8]  The reasoning in these decisions is sound, and this Court should rule similarly here.

In this case, the two operative agreements—*i.e.,* Pressed Juicery's Pressed Points Terms of Use and Messaging Program Terms and Conditions—include a mandatory arbitration and class action waiver clause that appears conspicuously in bold and/or capitalized font.  *See* LaBron Decl., Ex. B at pp. 4-8. & Ex. C at pp. 2-3.  Plaintiff agreed to abide by both agreements by affirmatively checking a box for each on the sign-up page next to a conspicuous hyperlink (underlined and in a blue/red font) containing the Terms, thus signifying her assent.  *Id.* at ¶¶ 7-11.  She used her own cell phone to complete the sign-up process and to voluntarily provide various personal information, and she received a free "shot" in consideration for signing up for the Pressed Points Program, among other things.  *Id.* at ¶¶ 12-17.  Moreover, Plaintiff not only had the opportunity to read the hyperlinked Terms before agreeing to them, but she also had the right to opt-out in writing of the arbitration provision in the Pressed Points Program Terms of Use within 30 days of signup, yet simply did not exercise that right.  *Id.* at ¶¶ 11, 18.  Thus, she agreed to be bound by those agreements, including the arbitration provisions within each agreement.  *See Mohamed*, *Nguyen*, *Graf*, *Rodriguez, Dickey, Tompkins*, *Crawford*, *Swift*, and *Tanis*, *supra*.  *See also Paxton v. Macy's W. Stores, Inc.,* 2018 WL 4297763, at *7 (E.D. Cal. Sept. 7, 2018) ("An arbitration clause within a contract may be binding on a party even if the party never actually read the clause.") (quoting *Pinnacle Museum Tower Assn. v. Pinnacle Mkt. Dev. (US), LLC*, 55 Cal. 4th 223, 236 (2012)); *Fteja v. Facebook, Inc.*, 841 F. Supp. 2d 829, 839 (S.D.N.Y. 2012) ("[C]licking the

---

[8] *See also Crawford v. Beachbody, LLC*, 2014 WL 6606563, at *3 (S.D. Cal. Nov. 5, 2014) (enforcing forum selection clause found in the terms and conditions on website where, at the final page of placing an order, plaintiff was required to click a "Place Order" button and language on the same page stated that "by clicking Place Order below, you are agreeing" to the website's terms and conditions, which were hyperlinked); *Tanis v. Sw. Airlines, Co.,* 2019 WL 1111240, at *7 (S.D. Cal. Mar. 11, 2019) ("Simply because Plaintiff may not have clicked the hyperlink (and was not required to before checking the box) … does not make its existence hidden or unclear.") (citing *Mohamed,* 109 F. Supp. 3d at 1198).

hyperlinked phrase is the twenty-first century equivalent of turning over the cruise ticket.  In both cases, the consumer is prompted to examine terms of sale that are located somewhere else. Whether or not the consumer bothers to look is irrelevant.").

> 3.  *Plaintiff's TCPA Claim Falls Squarely Within the Scope of the At-Issue Arbitration Provisions.*

Plaintiff cannot credibly contend the at-issue arbitration provisions do not encompass this dispute.  "[W]hen parties include a broad arbitration provision, ***every dispute*** between the parties having a significant relationship to the contract and all disputes having their origin or genesis in the contract should be sent to arbitration." *Digital Software Servs., Inc. v. Entm't Programs, Inc.,* 2010 WL 727610, at *3 (E.D. Cal. Mar. 1, 2010) (internal quotations and citation omitted, emphasis added).  Put another way, agreements to arbitrate "[a]ny dispute, controversy or claim" like Pressed Juicery's are "broad and far reaching," *Chiron*, 207 F.3d at 1131, and require arbitration of all disputes that "touch matters covered by the contract containing the arbitration clause." *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 721 (9th Cir. 1999).

With the limited exception of claims within the jurisdiction of a small claims court, the arbitration provisions at issue broadly encompass (among other things) "any dispute" between Plaintiff and Pressed Juicery that is "in any way related" to (i) Plaintiff's "receipt of text messages from Pressed Juicery or its service providers" or (ii) Pressed Juicery's "services, including, without limitation [its] Pressed Points Program, … promotional offers, … [its] Privacy Policy or [its] privacy practices generally, these Terms of Use, and this Arbitration Agreement…."  LaBron Decl., Ex. B at p. 4 & Ex. C at p. 2.  Plaintiff's claims fit squarely into these provisions.

In this regard, Plaintiff alleges that Pressed Juicery "sent or caused to be sent promotional text messages to" her in violation of the TCPA that "invade[d] her "privacy" and "intruded upon [her] seclusion upon receipt."  Compl., ¶¶ 2, 28, 35.  Thus, Plaintiff's TCPA claim falls squarely within the scope of the arbitration provisions in the at-issue agreements in this case.  *See, e.g., Koyoc v. Progress Fin.*

*Co.*, 2014 WL 1878903, at *6 (C.D. Cal. May 9, 2014) ("[T]he determination of Plaintiff's TCPA claim arises directly from and relates to his loan from Defendant and necessarily requires interpretation of the Loan Agreement and related Consent Agreement"); *Brown v. DIRECTV, LLC*, 2013 WL 3273811, at *4-6 (C.D. Cal. June 26, 2013) (arbitration provision that applied to "any legal or equitable claim relating to [the] Agreement" included TCPA claims); *McNamara v. Royal Bank of Scotland Grp., PLC*, 2012 WL 5392181, at *7 (S.D. Cal. Nov. 5, 2012) (arbitration provision limited to "any claim, dispute or controversy of any nature ... under or related to any Account [Plaintiff has] with the Bank" included TCPA claims based on at-issue calls relating to defendant's rewards program).   This conclusion is bolstered by the Supreme Court's well-accepted, long-standing holding that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 24-25 (1983); *see also Marmet Health Care Ctr., Inc. v. Brown,* 565 U.S. 530, 533 (2012) (the FAA "reflects an emphatic federal policy in favor of arbitral dispute resolution").   Thus, the Court should compel Plaintiff to arbitrate her dispute, as she agreed to do.

## C.   The Arbitration Should Proceed On an Individual Basis.

As noted above, the terms and conditions of the at-issue agreements each contain two explicit class action waivers: one in the arbitration provision itself and one standalone provision.  *See* LaBron Decl., Ex. B at pp. 4, 8 & Ex. C at pp. 2-3. As the Ninth Circuit has held, class waivers in arbitration provisions are enforceable. *See Murphy v. DirecTV, Inc.*, 724 F.3d 1218, 1225-26 (9th Cir. 2012) ("Importantly, the FAA meant what the [Supreme] Court in *Concepcion* says it means—that the Customer Agreement's class waiver is enforceable…..") (citing *Concepcion*, 563 U.S. at 1748)).  Accordingly, the Court should compel individual arbitration.

## D.   The Court Should Dismiss this Action In Favor of Arbitration.

Finally, this Court should dismiss this entire case in favor of arbitration.  As this Court has previously recognized, "[d]ismissal is proper where [as here] the

entirety of a plaintiff's claim is subject to arbitration." *Sunvalley Solar, Inc. v. China Elec. Equip. Grp. Corp.*, 2015 WL 13546433, at *5 (C.D. Cal. Oct. 29, 2015), *aff'd sub nom.*, *Sunvalley Solar, Inc. v. CEEG (Shanghai) Solar Sci. & Tech. Co*., 690 F.App'x 942 (9th Cir. 2017) (dismissing action where each cause of action arose from conduct governed by arbitration agreement, citing *Sparling v. Hoffman Constr. Co.,* 864 F.2d 635, 637-38 (9th Cir. 1988)).  Consequently, the Court should dismiss the Complaint because the at-issue arbitration agreements clearly encompass (and therefore bar) all the claims alleged in Plaintiff's Complaint. [9]

### E.   The Court Should Stay All Case Deadlines While Considering this Threshold Motion.

Federal courts in the Ninth Circuit and elsewhere routinely stay discovery and other scheduling deadlines in cases where, as here, there is a motion to compel arbitration pending.  *See, e.g., Stiener v. Apple Computer, Inc.,* 2007 WL 4219388, at *2 (N.D. Cal. Nov. 29, 2007) (granting motion to stay obligations under the court's scheduling order pending resolution of motion to compel arbitration because if the motion is granted the case will proceed to arbitration and "responsibility for the conduct of discovery [will] lie[] with the arbitrators" and noting that granting short stays of initial scheduling obligations and discovery are a "common practice" among federal courts) (citing various cases); *Intertec Contracting v. Turner Steiner Int'l, S.A.,* 2001 WL 812224, at *7 (S.D.N.Y. July 18, 2001) ("As is the general practice of district courts, a stay of discovery was imposed in this case while the motion to compel arbitration was pending before the Court.").  This Court should rule similarly in this instance, and it should stay all discovery and other case deadlines for the sake of judicial and party economy during the pendency of this Motion.

---

[9] The "provision for stay in 9 U.S.C. section 3" does not prevent a court from acting in its discretion to dismiss all claims entirely.  *Sparling*, 864 F.2d at 637-38 (dismissing where "plaintiffs could not possibly win relief" because all claims were subject to arbitration and section 3 of the FAA does "not limit the court's authority to grant a dismissal").  Such is true here.  Should the Court not be inclined to dismiss, however, Pressed Juicery respectfully requests in the alternative that this matter be stayed until completion of the arbitration, in accordance with Section 3 of the FAA.

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

- 19 -

NOTICE OF MOTION AND MOTION TO
COMPEL ARBITRATION AND DISMISS
AND/OR STAY, NO. 2:20-CV-10919

IV.   **CONCLUSION**

For all the foregoing reasons, and such additional reasons as may be presented, Pressed Juicery, Inc. respectfully requests the Court enter an order: (i) compelling Plaintiff to arbitrate her claims in this case on an individual basis, (ii) dismissing this action in its entirety, or alternatively staying this action, in favor of arbitration, and (iii) granting all other relief the Court deems just and proper, including staying all discovery and other scheduling deadlines during the pendency of this Motion.

Dated:          February 16, 2021                    Respectfully submitted,

MANATT, PHELPS & PHILLIPS, LLP


By: /s/ John W. McGuinness
John W. McGuinness
*Counsel for Defendant*
*PRESSED JUICERY, INC.*

1

## **<u>CERTIFICATE OF SERVICE</u>**

2   The undersigned counsel for Defendant certifies that the foregoing document

3 was served on all Parties and their counsel of record through the Court's CM/ECF

4 filing system on February 16, 2021.

5   I certify under penalty of perjury under the laws of the United States of

6 America that the foregoing is true and correct.

7   Executed on February 16, 2021 in Fairfax, Virginia.

8         By: /s/ John W. McGuinness

9          John W. McGuinness

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Manatt, Phelps &
Phillips, LLP
Attorneys at Law
Los Angeles

- 21 -

NOTICE OF MOTION AND MOTION TO
COMPEL ARBITRATION AND DISMISS
AND/OR STAY, NO. 2:20-CV-10919