JS-6

STAY

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LAUREN CHRISTIAN,<br><br>Plaintiff,<br><br>v.<br><br>PRESSED JUICERY, INC.,<br><br>Defendant. | Case No. 2:20-cv-10919 AB (JC)<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO COMPEL ARBITRATION [Dkt. No. 14]** |

Before the Court is Pressed Juicery, Inc.'s ("Defendant") Motion to Compel Arbitration ("Motion," Dkt. No. 14). Plaintiff Lauren Christian ("Plaintiff") filed an opposition ("Opp'n," Dkt. No. 16) and Defendant filed a reply ("Reply," Dkt. No. 17). For the following reasons, the court **GRANTS** Defendant's Motion.

**I. BACKGROUND**

**A. Plaintiff's Complaint**

On or about January 7, 2020, Plaintiff visited a Pressed Juicery store in Los Angeles County. Compl. ¶ 19. During this visit, Plaintiff enrolled in both the Pressed Points Program (hereinafter, "Points Program") and opted into receiving Pressed Juicery discounts and promotions via text messages (hereinafter, "Text Messages," "Text Messaging Program"). *Id.* at 20. On or about February 1, 2020, Plaintiff expressly revoked consent to receive Text Messages by texting "STOP." *Id.* at 23.

1.

Yet, on November 2, 5, and 15, 2020 Plaintiff received three text messages. *Id.* at 26. Due to these stray messages, Plaintiff is suing Pressed Juicery for violation of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. §§ 227, *et seq*. *Id.* at 55. Defendant now moves to compel arbitration as both the Points Program and Text Messaging Program include terms and conditions with an arbitration provision.

There are significant discrepancies between the parties regarding how the agreement transpired. In the Complaint, Plaintiff initially said she "orally agreed to enroll in the rewards program," then "the sales clerk took down Plaintiff's information and entered it into Pressed Juicery's system." *Id.* at 20. Plaintiff was then told to "click through certain check boxes and sign on the final checkout screen." *Id.* Defendant disputes this account. According to Defendant, "Pressed Juicery does not have an 'electronic system' or the like at any of its stores for [opting in], nor is signing up for Pressed Points part of the 'checkout' process.' " Motion at 3. "[A]ll customers (including Plaintiff) must voluntarily sign up for Pressed Points and Text Messaging themselves, either in-store using their smart phone or other computing device or at their home on such a device." *Id.* Defendant also provided the exact timestamps of the transaction which confirm there was a five minute gap between Plaintiff agreeing to the two contracts and receiving her free shot of juice as an incentive for joining the Points Program. Labron Decl. (Dkt. No. 14) ¶ 13. In response, Plaintiff appears to revise her story, saying "[t]he sales clerk *directed me* through the sign-up process and instructed me to provide certain information about myself, to check some boxes, and to click the sign-up button. I complied with all her instructions." Christian Decl. (Dkt. No. 16) ¶ 4 (emphasis added). Although these accounts differ, the differences are not material to the resolution of the Motion.

**B. The Arbitration Agreement**

The Arbitration Agreements ("Arbitration Agreements" or "Agreements") can be found online at pressedjuicery.com. Labron Decl. ¶ 6. Once applicants fill in their personal details such as their name, email, ZIP code, phone number and birth date,

they can check two boxes to opt in to the Points Program and Text Messaging Program.[1]  *Id.* at ¶ 8.  Next to each box, there is a statement confirming that checking the box indicates the customer's agreement to the terms and conditions.  Labron Decl., Ex. A.  Applicants can review the full Agreements by clicking on the hyperlinks in these sections.  *Id.*  The Text Messaging terms and conditions state:

> Any arbitration between you and Pressed Juicery will be governed by the Federal Arbitration Act and the Commercial Dispute Resolution Procedures and Supplementary Procedures for Consumer Related Disputes (collectively, "AAA Rules") of the American Arbitration Association ("AAA"), as modified by these Messaging Terms, and will be administered by the AAA.  The AAA Rules and filing forms are available online at www.adr.org, by calling the AAA at 1-800-778-7879, or by contacting Pressed Juicery.  The arbitrator has exclusive authority to resolve any dispute relating to the interpretation, applicability, or enforceability of this binding arbitration agreement.

Labron Decl., Ex. C.

**II. LEGAL STANDARD**

The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, *et. seq.*, provides that "[a] written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. "The principal purpose of the FAA is to ensure that private arbitration agreements are enforced according to their terms." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 344 (2011) (internal quotations and citation omitted).  A party "aggrieved by the alleged failure, neglect, or refusal of

---

[1] The Court finds that only the Text Messaging Program is relevant towards resolving this dispute.

3.

another to arbitrate" may bring a motion to compel arbitration in a federal district court. 9 U.S.C. § 4. If a valid arbitration agreement exists covering the dispute, the district court must compel arbitration. *Lifescan, Inc., v. Premier Diabetic Servs., Inc.*, 363 F.3d 1010, 1012 (9th Cir. 2004); *see also Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) ("By its terms, the [FAA] leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed").

When deciding a motion to compel arbitration under the FAA, the Court must first "determine[] that the contract in question is within the coverage." *New Prime Inc. v. Oliveira*, 139 S. Ct. 532, 538 (2019) (quoting *Prima Paint Corp. v. Flood & Conklin Mfg.*, 388 U.S. 395, 402 (1967)). If a contract falls within the scope of the Act, the Court looks to what are called "gateway" questions of arbitrability such as (1) whether there is a valid agreement to arbitrate and (2) whether the dispute falls within the scope of the arbitration clause. *Republic of Nicaragua v. Standard Fruit Co.*, 937 F.2d 469, 477-78 (9th Cir. 1991). The FAA provides for trials on issues concerning "the making of the arbitration agreement or the failure, neglect, or refusal to perform the same." 9 U.S.C. § 4. "If no jury trial be demanded by the party alleged to be in default . . . the court shall hear and determine such issue." *Id.*

The parties can delegate "gateway" questions to the arbitrator but only when there is "clear and unmistakable evidence" that this was the parties' intent. *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 531, 202 L. Ed. 2d 480 (2019) (quoting *First Options of Chi., Inc. v. Kaplan,* 514 U.S. 938, 944, 115 S.Ct. 1920 (1995) (alterations omitted)). If the parties agreed to delegate arbitrability, the court must uphold the agreement's terms. *Momot v. Mastro*, 652 F.3d 982, 987 (9th Cir. 2011). However, a court may find the arbitration agreement—or a delegation clause within an arbitration agreement—to be invalid "upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.

## III. DISCUSSION

### A. The Arbitration Agreement is Within the Coverage of the FAA

The first question to address is whether the FAA is applicable to this situation. The FAA applies to arbitration provisions in a "contract evidencing a transaction involving commerce." 9 U.S.C. § 2. The FAA does not govern "contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce." 9 U.S.C. § 1. Here, there is no question that the contract evidences a transaction involving commerce, and that it is not a contract of employment of workers involved in interstate commerce. Thus, the arbitration clause falls within the scope of the FAA.

### B. Plaintiff Assented.

As discussed previously, parties to an arbitration agreement can delegate gateway enforceability issues to the arbitrator. However, the issue of contract formation—i.e., whether an agreement to arbitrate or the delegation clause exists at all—is not a delegable arbitrability issue and must be decided by the Court. *See Cortez v. Nationstar Mortg. LLC*, 2020 WL 2303090, at *3 (C.D. Cal. Mar. 2, 2020). "When deciding whether a valid arbitration agreement exists, courts generally apply 'ordinary state-law principles that govern the formation of contracts.' " *Heller v. Rasier*, 2020 WL 413243, at *5 (C.D. Cal. Jan. 7, 2020) (quoting *First Options*, 514 U.S. at 944).

Plaintiff argues that there was no agreement to arbitrate because there was no mutual assent. "[U]nder California law, mutual assent is a required element of contract formation." *Knutson v. Sirius XM Radio Inc.*, 771 F.3d 559, 565 (9th Cir. 2014). " 'Mutual assent may be manifested by written or spoken words, or by conduct,' [citation] and acceptance of contract terms may be implied through action or inaction." *Id.* California courts use the objective theory of contracts to consider the "objective intent . . . as evidenced by the words of the contract, rather than the subjective intent of one of the parties." *Iqbal v. Ziadeh*, 10 Cal. App. 5th 1, 8, 215 Cal. Rptr. 3d 684, 689 (2017) (internal quotations omitted). Under either version of

the facts set forth above, Plaintiff assented to the contract terms.  Plaintiff checked the boxes next to the terms and conditions which were accompanied by conspicuous language informing her that checking the boxes signified her assent to the agreements.  As California federal courts routinely hold, this is sufficient to manifest assent.  *See e.g., Graf v. Match.com, LLC*, No. CV 15-3911 PA (MRWX), 2015 WL 4263957, at *4 (C.D. Cal. July 10, 2015); *Rodriguez v. Experian Servs. Corp.*, No. CV 15-3553-R, 2015 WL 12656919, at *2 (C.D. Cal. Oct. 5, 2015)*; see also Nguyen v. Barnes & Noble, Inc.*, 763 F.3d 1171, 1176-77 (9th Cir. 2014) (internet agreements are valid if "the user is required to affirmatively acknowledge the agreement before proceeding with use of the website," or "the website puts a reasonably prudent user on inquiry notice of the terms of the contract. . .").  Thus, Plaintiff assented to the terms and conditions, including the Arbitration Provision.

Plaintiff argues that she never assented because the provisions were inconspicuous because she was "deprived of the opportunity" to read the terms, and because she was rushed through the process by Defendant's sales clerk.  *See* Opp. 5:11-28.  However, none of these theories negate Plaintiff's assent as these arguments question enforceability.Plaintiff was put on notice that by checking the boxes she was assenting to the terms and conditions; whether she took the time to read them is beside the point. *See Maynez v. Walmart, Inc.*, No. CV200023DSFJPRX, 2020 WL 4882414 (C.D. Cal. Aug. 14, 2020) ( "Whether or not Plaintiff actually saw, reviewed, or read the Terms of Use is not relevant to the question of whether she agreed to them.").

Thus, the Court finds that Plaintiff assented to the Agreement.

**C. The Delegation Clause is Valid and Enforceable.**

The Court next decides whether it or an arbitrator must decide gateway questions of arbitrability.  Pointing to the delegation clause, Defendant argues that such matters are for the arbitrator, whereas Plaintiff contends that the delegation clause is unenforceable, leaving these gateway issues for the Court.

Courts determine gateway questions of arbitrability unless the "parties clearly

and unmistakably provide otherwise." *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83, 123 S. Ct. 588, 591, 154 L. Ed. 2d 491 (2002). Evidence can be found from either "a course of conduct demonstrating assent" or "an express agreement to do so." *Momot*, 652 F.3d at 988 (quoting *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 80-82, 130 S. Ct. 2772, 177 L. Ed. 2d 403 (2010) (Stevens, J., dissenting) (citing *First Options,* 514 U.S. at 946, 115 S.Ct. 1920)). However, a delegation clause will not be enforced if it is invalid as a matter of contract law. *See McLellan v. Fitbit, Inc.*, No. 3:16-CV-00036-JD, 2017 WL 4551484, at *1 (N.D. Cal. Oct. 11, 2017) ("A delegation clause is enforceable when it manifests a clear and unmistakable agreement to arbitrate arbitrability, and is not invalid as a matter of contract law.").

### 1. The Delegation Clause is Clear and Unmistakable.

Here, the Text Messaging terms include a delegation clause stating, "The arbitrator has exclusive authority to resolve any dispute relating to the interpretation, applicability, or enforceability of this binding arbitration agreement." Motion, Ex. C. Such language is routinely deemed a sufficiently clear delegation of the gateway questions to the arbitrator. *See e.g., Momot*, 652 F.3d at 988 (the following clause is a clear delegation: "If a dispute arises out of or relates to … *the validity or application of any of the provisions of this Section 4* … the dispute shall be resolved exclusively by binding arbitration."); *Ratajesak v. New Prime, Inc.*, No. SACV189396DOCAGRX, 2019 WL 1771659, at *5 (C.D. Cal. Mar. 20, 2019) (the following clause is a clear delegation: "**ANY** DISPUTES AS TO THE RIGHTS AND OBLIGATIONS OF THE PARTIES, INCLUDING THE ARBITRABILITY OF DISPUTES BETWEEN THE PARTIES, SHALL BE FULLY RESOLVED BY ARBITRATION . . . "). Additional support for the conclusion that the parties intended for these gateway questions to be left to the arbitrator is the incorporation of the "AAA rules" into the arbitration agreement. Labron Decl., Ex. C. The Ninth Circuit has held that "incorporation of the AAA rules constitutes clear and unmistakable evidence that contracting parties agreed to arbitrate arbitrability." *Brennan v. Opus*

7.

*Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015).

### 2. The Delegation Clause is Not Revocable On State Law Grounds.

An arbitration agreement is valid "save upon such grounds as exist at law or in equity for the revocation of any contract." *Rent-A-Center*, 561 U.S. at 70 (quoting 9 U.S.C. § 2). Only challenges specifically aimed at the agreement to arbitrate, not at the contract as a whole, are "relevant to a court's determination whether the arbitration agreement at issue is enforceable." *Id.* It further follows that where the " 'written provision to settle by arbitration …,' [] that [a party] asks [the court] to enforce is the delegation provision," the challenging party must "challenge[] the delegation provision specifically, [or the court] must treat it as valid under § 2, and must enforce it under §§ 3 and 4, leaving any challenge to the validity of the Agreement as a whole for the arbitrator." *Rent-A-Center*, 561 U.S. at 71-72.

Here, Defendant seeks to enforce the delegation provision. Plaintiff argues that it is not enforceable based on undue influence, economic duress, and unconscionability, which can be valid defenses to enforcement under California law.

However, all of Plaintiff's arguments are aimed at either the entire contract or the entire Arbitration Agreement, rather than at the delegation clause specifically. For example, according to Plaintiff, "Defendant's sales clerk unduly influenced Plaintiff to 'agree' to the arbitration provisions." Opp'n at 21-22. Specifically, the clerk discussed the program, "insisted" that the Plaintiff sign up immediately, and "pressured her not to even read the arbitration provision in the Terms & Conditions because she was holding up the line." *Id.* This is an argument against the enforceability of the full contract or the Arbitration Agreement overall, not against the enforceability of the delegation clause particularly. Plaintiff's economic duress and unconscionability arguments are likewise directed at the full contract and not at the delegation clause alone. For example, Plaintiff fails to explain how the delegation clause could be the product of economic duress, and fails to show how the terms of the delegation clause (as opposed to the Arbitration Agreement as a whole) are

8.

substantively unconscionable. Thus, because Plaintiff does not "challenge[] the delegation provision specifically, [the court] must treat it as valid under § 2, and must enforce it under §§ 3 and 4, leaving any challenge to the validity of the Agreement as a whole for the arbitrator." *Rent-A-Center*, 561 U.S. at 71-72.

Arguably, it may not be practicable for Plaintiff to separately challenge the delegation clause as being the result of undue influence or economic duress because the entire Agreement, including the delegation clause, was formed at the same time in the same transaction and under the same circumstances. As such, the Court will construe Plaintiff's arguments directed at the entire Agreement as applying first and equally to the delegation clause, and therefore the Court considers these arguments. However, they fail on their merits.

California law recognizes three kinds of undue influence that may permit a party to void a contract: "(1) use of a confidential or fiduciary relationship to obtain an unfair advantage; (2) taking unfair advantage of another's weakness of mind; or (3) taking a grossly oppressive and unfair advantage of another's necessities or distress." *Richards v. Stanley*, 2005 WL 8176778, at *4 (E.D. Cal. June 20, 2005) (citing Cal. Civ. Code § 1575). Plaintiff does not expressly invoke any type of undue influence. However, plainly the first type (confidential or fiduciary relationship) does not apply. Regarding the second and third types of undue influence, there are "two required elements for making a successful claim of undue influence under these theories: (1) undue susceptibility of the servient person, and (2) excessive pressure by the dominating person." *Richards v. Stanley*, No. CIVS042564DFLDAD, 2005 WL 8176778, at *4 (E.D. Cal. June 20, 2005) (discussing the "definitive California case *Odorizzi v. Bloom Sch. Dist.*, 246 Cal.App.2d 123, 131 [] (1966)"). Plaintiff has not shown that she was unduly susceptible to the influence of Defendant's sales clerk. Nor can the Court conclude that the Plaintiff's experience of a rushed check-out process and social pressure to complete her business due to the long line behind her—commonplace retail experiences—amounted to "excessive pressure," especially when

9.

the product involved was a free shot and wholly optional Points and Text Messaging Programs.

Plaintiff's economic duress argument fails for similar reasons. As Plaintiff acknowledges, the doctrine of economic duress may excuse a party's contractual obligations when the other party does "a wrongful act which is sufficiently coercive to cause a reasonably prudent person *faced with no reasonable alternative* to succumb to the perpetrator's pressure." *Rich & Whillock, Inc. v. Ashton Dev., Inc.*, 157 Cal. App. 3d 1154, 1158 (1984) (emphasis added). But it only applies when the plaintiff "had no 'reasonable alternative' to the action it now seeks to avoid (generally, agreeing to contract)." *CrossTalk Prods., Inc. v. Jacobson*, 65 Cal. App. 4th 631, 644 (1998). In addition, "[a] defendant's 'knowledge' of the plaintiff's economic exigencies is [] a necessary component of liability of economic duress." *Johnson v. IBM Corp.*, 891 F. Supp. 522, 530 (N.D. Cal. 1995). First, it appears that Plaintiff made no purchase and instead just received a free shot as an incentive for signing up for the Points Program; Plaintiff fails entirely to explain how this circumstance of her receiving a free product reflects any *economic* duress. Second, Plaintiff does not argue that she was under any "economic exigencies" or that Defendant knew of them. Finally, the Court rejects Plaintiff's claim that she had "no reasonable alternative" but to agree to the Arbitration Agreement, because she could have simply declined to participate in Defendant's entirely optional Programs.

Thus, the delegation clause is enforceable and all of Plaintiff's remaining challenges to the enforceability (undue influence, economic duress, unconscionability, etc.) or to the scope of the Arbitration Agreement are for the arbitrator to decide.

## IV.   CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendant's Motion to Compel Arbitration. Plaintiff Lauren Christian shall arbitrate her claim against Defendant.

The Court hereby **ORDERS** that this action is **STAYED** pending arbitration. The parties are **ORDERED** to file Joint Status Reports every 120 days until the

arbitration is concluded, and a Final Joint Status Report by 14 days after the arbitration concludes. Each Joint Report shall indicate on its face page the due date for the next one.

In light of the stay, this action is removed from the Court's active caseload and **administratively closed** until further application by the parties or Court Order. The Court retains jurisdiction. Any pending calendar dates are **VACATED**.

**IT IS SO ORDERED.**

Dated: April 23, 2021

_____
HONORABLE ANDRÉ BIROTTE JR.
UNITED STATES DISTRICT COURT JUDGE

11.